Georgia D. Kramer, Esq. Village Attorney, Rye Brook
With respect to storm or drainage sewers, as distinct from sanitary or other types, the Commissioner of Transportation has the responsibility within villages to maintain such facilities which are constructed primarily to service the State highway, provided those facilities were constructed or reconstructed after January 1, 1971; otherwise, villages are responsible for such maintenance.
You ask whether the State or a village is responsible for removal of hazardous trees within village limits alongside a State highway. Your question presupposes several assumptions: first, that a particular tree is dead or hazardous; second, that a given highway is actually a State highway; and, third, that such a tree is situated within the State's right of way for such a highway. Assuming all of those questions are answerable in the affirmative, the New York State Department of Transportation has the power, and subject to certain discretionary limitations, the duty to remove or trim such trees.
With respect to trees actually planted by the Department of Transportation which are not on State property but are in adjacent lands, the Commissioner's obligation to maintain such trees does not extend beyond two years from planting (Highway Law, § 19).
With respect to trees within the limits of State highways, the Commissioner "may provide * * * for the removal of, or the trimming of any trees within the boundaries of the highway necessary for the convenience or safety of the public, or the construction or preservation of the highway" (id., § 11[7]).
With respect to trees on or alongside State highways, subject to his judgment and discretion and subject to fiscal limitations (see Tango vTulevich, 61 N.Y.2d 34, 39-41 [1983]; Garlinghouse v Jacobs, 29 N.Y. 297,303-304 [1864]), the Commissioner, or his delegee, has the duty to inspect roadside areas and prune or remove dangerous trees or parts thereof (Highway Law, § 45[5] [as to trees outside right-of-way]; see Rinaldi v State of New York, 49 A.D.2d 361, 363 [3d Dept 1975] [as to trees adjacent to road whether within or without right-of-way]). Cf. Harris v Village of East Hills, 41 N.Y.2d 446,449-450 (1977); see also, 27 N Y Jur, Highways, Streets and Bridges,
§ 442.
"It is, of course, equally certain that while the State has this duty, no liability attaches unless the State has had actual or constructive notice of the dangerous or potentially dangerous condition (Berkshire Mut. FireIns. Co. v State of New York, 9 A.D.2d 555 [3d Dept, 1959]) and then fails to take reasonable measures to correct the condition" (Rinaldi vState of New York, supra, p 363).
Your second question relates to the responsibility to maintain storm sewer catch basins. This question presupposes several assumptions: first, that said facility is a storm sewer as distinct from a sanitary or other type of sewer; and second, that a given highway is actually a State highway. Assuming both of those questions are answered in the affirmative, "the state shall maintain any drainage ditches and storm sewer facilities which are constructed primarily to service the state highway" (Highway Law, § 46).
However, an important caveat should be added. Prior to the effective date of chapter 628 of the Laws of 1970 (i.e., January 1, 1971), maintenance of drainage facilities for State highways within village limits was strictly a local village function. Chapter 628 added the language, above quoted, to section 46 of the Highway Law. This statutory amendment has always been construed by the Department of Transportation as prospective only (see, e.g., letter of September 16, 1982 from Assistant Commissioner for Legal Affairs, Darrell W. Harp to Henry D. Blumberg, Esq., Village Attorney, Village of Mohawk). In reference to that 1970 amendment, Assistant Commissioner Harp wrote (in the above-cited letter):
 "It did not contemplate any takeover by this Department of existing drainage systems serving State highways in villages. What it did intend was that the State would be responsible for the maintenance of new drainage systems providing drainage to the pavement area of State highways in villages if those drainage systems were constructed after the effective date of the amendment.
 "The answer to your question, then, is that if the culvert and/or storm sewer system at issue was constructed by the State after 1970 and was constructed primarily to serve the State highway facility, then maintenance responsibility, which includes cleaning, is with the Department. In all other cases, maintenance responsibility remains with the Village."
The Attorney General has found no reason to disagree with that interpretation by the Department of Transportation. Moreover, "the manner in which the [government] officials have historically administered [the statute] is of great import. Unless manifestly wrong, the meaning which public officials attach to an act which they are responsible for administering is to be accorded great weight in construing the law [citations]" (Shoreham-Wading River Cent. Sch. Dist. v Town ofBrookhaven, 107 A.D.2d 219, 224 [2d Dept, 1985]).
Thus, if the Department of Transportation had maintenance responsibility for the storm water facilities prior to the incorporation of the village, then this responsibility would continue to lie with the Department of Transportation.
In conclusion, subject to fiscal constraints and within the judgment and discretion of the Commissioner of Transportation, said Department has the responsibility to inspect and prune or remove dangerous trees or parts thereof within or alongside the State's right of way for State highways within village.
With respect to storm or drainage sewers, as distinct from sanitary or other types, the Commissioner of Transportation has the responsibility within villages to maintain such facilities which are constructed primarily to service the State highway, provided those facilities were constructed or reconstructed after January 1, 1971; otherwise, villages are responsible for such maintenance.