Hines *v.* The City of Lockport.

---

MARY A. HINES, Appellant, *v.* THE CITY OF LOCKPORT, Respondent.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1871.)

It seems where a city common council has exercised discretionary power to make streets and cross-walks, and has the means, or the power to raise money for the purpose, it becomes bound thereby to keep them in repair.

A city cross-walk is part of the street on which it is placed, and the person or corporation bound to repair the street, is bound to repair the cross-walk also as part of the street.

When the common council of a city or trustees of a village are made commissioners of highways, the duty to repair the streets becomes imperative, unless they not only have not funds applicable to that use, but have not the power to raise them.

Hines *v*. The City of Lockport.

The common council of Lockport having power, by the charter of that city, to direct making, repairing, &c., of any of the streets, cross-walks, &c., in the city is guilty of neglect of duty, if being cognizant of a defect in a cross-walk, it omits to give direction for the repair thereof, and this is so, although the language of the statute is permissive merely.

And where the common council of that city has funds which it can appropriate to such use, the city is liable for its neglect to keep cross-walks, &c., in repair.

And the *onus* is upon the city to show that the funds obtainable for such purpose have been exhausted.

THIS was an appeal by the plaintiff from a judgment dismissing her complaint, entered upon the report of a referee.

The plaintiff brought her suit to recover damages from the defendant, the city of Lockport, for injuries received on account of a cross-walk in that city, which was allowed to remain in an unsafe condition for about a year, and plainly observable by all who passed it. The referee found that the defendant was chargeable with notice of the condition of the walk; that the plaintiff was free from negligence; but refused to find in her favor. The facts appear in the opinion of the court.

*S. W. Lockwood*, for the appellant.

*James F. Fitts*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J. It is found by the referee, that the defendant by its officers, in August, 1867, caused to be constructed across Spring street, in the city of Lockport, a cross-walk consisting of two planks, the interior edges of which were so crooked as to leave an opening between those across the gutter four inches wide, and several feet in length. This opening was filled when the walk was laid with a piece of plank, which was kept in its place by spikes, so that when the walk was completed it was safe and in good order.

In about a year after the completion of the walk, the planks of which it was constructed became loosened, and the piece of plank which had been put between them to fill the

opening was in some way removed, and a hole left between the plank of from four to six inches in width. This opening rendered the walk dangerous to persons passing over it, especially so in the night.

On the 30th June, 1870, in the night time, and during a severe thunder storm, and while it was very dark, except when lightened by the flashes of lightning, the plaintiff attempted to pass along this walk, fell through and sustained injury to the extent of $300.

The walk had been in a dangerous condition for about a year, and that fact was known to the common council.

The referee held as a conclusion of law, that as it was in the discretion of the common council to direct the repairs of cross-walks in said city, it was not liable because of the neglect or refusal to exercise such discretion, and he therefore ordered judgment dismissing plaintiff's complaint.

If this conclusion of the referee is a correct expression of the law relating to the powers and duties of the common council of Lockport, the inhabitants of that city are of all men the most miserable.

The proposition comes to this, the common council may make or cause to be made, streets, sidewalks, cross-walks, sewers, culverts and drains, and it is thereafter relieved from all liability in respect thereto, notwithstanding the streets and walks may be washed away by floods, the sewers, &c., fall in by reason of defective construction, or be filled up for want of proper care, and the inhabitants whose business calls them into the streets in the night, and without fault fall into the opening in the streets or sewers, and are thereby injured must bear the loss, because the common council have not seen fit to exercise the discretion vested in them by the charter, and cause the defects in the streets to be repaired.

It rests entirely in the discretion of the common council, when a new street is to be put in condition for public use, when a new side or cross-walk is to be laid, or street paved, sewer or drain made, and in what manner such work is to be done. It is also a matter resting in discretion, whether any,

and, if any, what part of the work or expense of making a local improvement shall be done or borne by the city, and how much by the persons benefited. (§ 10 of chap. 835 of the Laws of 1869, tit. 6, p. 2004.) This is, I apprehend, the extent of their discretion.

The first and one of the most important questions arising on this appeal, is whether the common council has the power to make or repair side and cross-walks in the said city. That it has the power to make and repair streets is not questioned. A cross-walk lies in the street and is a part of it; when it is out of repair the street is out of repair, and the person or corporation bound to repair the street is bound to repair the cross-walk; or, which is the same thing, the part of the street on which it lies must be made so as that teams and persons may pass over it in safety.

When there is a sidewalk on either side of the street, the cross-walk lies between them, and within the space set apart for teams, and is intended to furnish the foot passenger a convenient way over the gutters on each side of the street.

In *Graves* v. *Otis* (2 Hill, 466) it was held that the commissioners of highways had control of the whole space set apart a street, and it must follow that it is their duty to keep such space in repair. This does not mean that they are required to construct side or cross-walks; but if the latter is constructed, it is the duty of the commissioners to keep in repair that part of the street in which it lies.

But the power and duty of the corporation of Lockport to make and repair cross-walks are not left to be inferred; they are expressly given and imposed by the charter. By subdivision 17 of section 8 of title 3 of chap. 365 of Laws of 1865, the common council has power to direct the making, curbing, repairing, macadamizing, paving, graveling and flagging of any of the streets, alleys, walks and cross-walks in said city.

The statute does not say in terms to whom the direction shall be given, whether to the street superintendent or to the persons locally benefited by the work. The direction is to be given to the superintendent in three cases:

1st. When it is the duty of the common council to do the work. (Charter, § 12, title 4.)

2d. When the work to be done is a local improvement and the expense to be assessed upon and paid by the persons benefited.

3d. When the work is such as may be done by individuals and they omit to do it within the time allowed for that purpose. (Charter, § 3, title 6.)

Individuals are permitted to do such part of the work in making such local improvement as may be assessed to them by the assessors when the work is of such description as that it may be done by those interested severally. (Same section.)

In this case the common council, although cognizant of the defect in the work, gave no direction to any person or officer to repair the walk, and thus a duty clearly imposed has been as clearly neglected. Whether the city is liable to the plaintiff by reason of such omission is a question to be hereafter considered.

The proposition is repugnant to every man's sense of right and justice, that the common council of Lockport or of any other city can construct a cross-walk in a public street, knowingly suffer it to be out of repair until a traveler breaks a limb or suffers some other great bodily harm by reason of defects in it, and nevertheless be exempt from all liability for such gross, culpable negligence. If the statute imposes the duty to build and yet deprives them of the power, or, what is the same thing, deprives them of the means to repair, the legislature, and not the corporation, is liable; but when there is no such want of means or power, if the cross-walk is built, it must be kept in repair.

If there is no power to repair a walk, it ought not to be built, and those who build under such circumstances are deserving of the severest condemnation.

But if I am wrong in supposing that the duty of repairing cross-walks is in terms imposed upon the common council by the charter, it has no discretion whether it will repair a walk that has become dangerous to travelers. It has, in addition

to the powers mentioned above, that of commissioners of high ways of towns. (§ 1, title 5, of the charter.) Under that power it is the imperative duty of the common council to cause cross-walks, &c., to be repaired; and if it is not done, the city is liable for whatever damages individuals may sus tain by reason of such omission.

The section referred to is in the following words: "The common council shall be commissioners of highways of said city. They may regulate, repair, amend, alter and clean the streets, alleys, highways, bridges, cross and sidewalks, drains, sewers, wharves, piers, docks, canals and slips in said city. * * * But nothing herein contained shall prevent the improving of highways by local assessment."

More extensive powers over the streets, cross-walks, side-walks, &c., could not well be conferred; and the only limita-tion is, that, notwithstanding the power is thus given to the corporation, the expense of improving the streets may be imposed upon the persons benefited. The duty of making the improvement rests with the corporation; but the expense, instead of being a charge upon the city treasury, may be imposed upon those deriving benefit from such improvement.

The language of the charter is permissive, "the common council *may* regulate," &c., and therefore it is insisted that it may omit, in its discretion, to perform the duty, and not be liable for damages resulting from such omission. Such, however, is not the law. The true rule is laid down in *Hutson* v. *The Mayor* (5 Seld., 163). It is there said that when a public body is clothed with power to do an act which the public interest requires to be done, and the means of performance are placed at its disposal, the execution of the power may be insisted on as a duty, notwithstanding the statute conferring it is only permissive. (*The Mayor, &c.*, v. *Furze*, 3 Hill, 612.)

It was for a long time considered by the profession doubt-ful whether commissioners of highways of towns were liable for injuries resulting from their neglect to keep the roads and bridges in their towns in repair. It has, however, been

finally settled that they are not liable unless they have in their hands funds applicable to such repairs. (*Garlinghouse* v. *Jacobs*, 29 N. Y., 297.)

But when the common council of a city, or trustees of a village, are made commissioners of highways, the duty to repair the streets becomes imperative, unless they not only have not funds applicable to that use, but have not, by the charter, the power to raise them. (*Weet* v. *The Village of Brockport*, 16 N. Y., 161; note to *Conrad* v. *Trustees of Ithaca*, id.)

In *Hickok* v. *The Trustees of Plattsburgh* (15 Barb., 427), the corporation was sued for damages sustained by the plaintiff in falling, in the night, into a trench dug in one of the streets of the village, which was left without lights or guards, notwithstanding the existence of the trench was known to one of the trustees. The trustees were, by the charter, made commissioners of highways, and it was shown that there remained unapplied 800 out of 1,000 days' highway labor assessed on the inhabitants. The plaintiff was nonsuited, on the ground that the trustees, as commissioners of highways, were independent officers, and the corporation was not liable for their neglect of duty.

This judgment was reversed by the Court of Appeals, as appears by the statement of DENIO, J., in *Conrad* v. *Trustees of Ithaca*, on the ground that the corporation was liable for the neglect of duty by the trustees; that they were not independent officers, but stood to the corporation in the relation of a servant to his master, and it was liable to the same extent as a master would be for the misconduct of a servant.

In *Conrad* v. *The Trustees of Ithaca*, the Court of Appeals adopted the opinion of SELDEN, J., in *Weet* v. *The Village of Brockport*, as a correct exposition of the law applicable to the liability of corporations and individuals upon whom the sovereign power has imposed, by grant or charter, the obligation to perform duties for the benefit of the public.

The distinction between the liability of the commissioners of highways of towns, and of corporations whose trustees or

common council are declared by charter to be commissioners of highways, is thus stated by SELDEN, J.: "Whenever an individual or corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in cases of neglect to perform such covenant, not only to indictment, but to private action at the suit of the person injured by such neglect. In all such cases the contract made with the government is deemed to inure to the benefit of every individual interested in its performance."

Again he says: "The liability of municipal corporations for the acts of trustees, made by the charter commissioners of highways, is not that of commissioners depending on whether or not they have funds applicable to the use, but is an absolute liability resulting from a contract with the sovereign power implied from the acceptance of the charter, that they would perform the duties thereby imposed upon them."

DENIO, J., says (*Conrad* v. *The Trustees of Ithaca*), that it was held in the case of *Hickok* v. *Trustees of Plattsburgh* to be a corporate duty to keep the street in a safe condition

It seems to me that the principles thus settled by the court of last resort establish the liability of the city of Lockport for the neglect of the common council to keep the cross-walk in question in repair, provided the common council had funds which it could appropriate to that use or the power to raise them.

The next and only remaining inquiry is, whether the common council was furnished with funds that it could apply to the repair of the cross-walk in question.

Section 17 of title 5 of the charter, provides that $2,500 of the moneys raised by the common council, and no more, except as thereinafter provided, may be used to defray the expense of repairing and keeping in order, the highways, sewers, bridges and public grounds of the city. By sections 18 and 19, each male inhabitant above the age of twenty-one years, not assessed for real or personal property in

said city, and not paupers or lunatics, are obliged to pay one day's poll tax, which may be commuted for one dollar, to be applied in addition to the sum named in the preceding section to the repair, &c., of the highway.

How much arises from the poll tax we do not know, but it must be assumed that funds sufficient to make all ordinary repairs of streets and cross-walks are furnished.

Under these circumstances, it was incumbent on the defendant to show, if it could be shown, that there were not funds applicable to the repair of the cross-walk in question. They have the means of showing the exact condition of the highway fund at any and at all times, while the citizen cannot be presumed to have any knowledge on the subject.

The commissioners of highways of towns owe no duty to individuals to keep the highway in repair, unless furnished with funds. To subject them to liability, that fact must be alleged and proved by the party seeking to charge them. But when trustees of villages, or the aldermen of cities, are made commissioners, they are liable for neglect of duty, unless the charter withholds from them the power to raise funds to keep streets, &c., in repair if any means are furnished to them which they are authorized to apply to repairs, and if the corporation desires to exempt itself from liability by reason of the want of funds, it must prove the fact, and, unless proved, is liable.

If the repair of cross-walks is not a charge on the city treasury, but is to be deemed a local improvement, and, as such, the expense is to be borne by those benefited, the city is still liable for damages resulting from neglect to keep them in repair.

Its power to direct the repair does not depend upon the consent of the people, or any portion of them. The common council have to make the order and the work must be done, and the property benefited must pay the expense, or the persons liable to be assessed must do the work themselves.

There is, therefore, in any contingency, ample means accessible to the council with which to do the work, and, upon

every principle, the city should be liable if it is not done.

The judgment of the referee is reversed, and a new trial granted; costs to abide the event.