## LATHAM Y. AVERY, RESPONDENT, *v.* THE CITY OF SYRACUSE, APPELLANT.

*City of Syracuse — duty of, to repair its sidewalks — the owner and not the tenant of adjoining premises is bound to repair*—1860, *chap.* 13, *sec.* 3—*what evidence of a defect is admissible to charge the city with notice of it — how long it must have existed.*

This action was brought by the plaintiff to recover damages for injuries sustained by reason of his having fallen, while passing along a defective sidewalk immediately adjacent to premises of which he was then in possession under a lease. The defendant's charter conferred upon it power to make and repair sidewalks, and imposed a duty upon every owner of real estate, "in front of whose premises a sidewalk or gutter has been heretofore made, to keep the same at all times in suitable and proper repair."

*Held*, that in the absence of any evidence to show that the plaintiff had by the terms of his lease agreed to keep the sidewalk in repair, or that he had there erected a nuisance or obstruction which caused the injury, the city was liable for the damages occasioned by the defect.

Upon the trial the plaintiff was allowed to show that other persons had tumbled down upon the sidewalk and been injured while it was out of repair.

*Held*, no error.

The judge, in charging the jury that it was for them to decide whether the defect had existed for a sufficient length of time to charge the city with notice thereof, said that "not in order for even a week would be sufficient. Some courts have held a week, some a little longer."

*Held*, error.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages sustained by the plaintiff in consequence of falling upon a defective sidewalk on Walnut street, in the city of Syracuse, on the 20th of July, 1879.

*Martin L. Knapp*, for the appellant.

*Charles B. Sedgwick*, for the respondent.

HARDIN, J.:

Plaintiff with his wife, on the morning of July 20, 1879, was returning from church and in passing over a sidewalk alleged to be defective fell and received injuries. This action is to recover therefor. At the time of the injuries plaintiff was lessee of the

premises adjacent to the sidewalk, but there was no covenant to repair given by the plaintiff. Nor was there anything in the terms of the lease, or elsewhere disclosed, which cast the duty of repairing or maintaining the sidewalk in repair upon the plaintiff. The stringers were decayed and looked "just like any piece of rotten wood.". There was evidence tending to show that the walk had been in a defective condition for some time, and sufficient to warrant the submission to the jury of the question whether the defendants had constructive notice of its defective condition, and having such notice by lapse of time failed of its duty in the premises by omitting to make, or cause to be made, suitable repairs. The charter of the defendant confers upon its common council power to make and repair sidewalks, and clothes them with the powers and charges them with the duties of commissioners of highways. (Sec. 1, tit. 6 of the Revised Charter.) The same charter also imposes a duty upon every owner of real estate, "in front of whose premises a sidewalk or gutter has been heretofore made, to keep the same at all times in suitable and proper repair." (Sec. 2 of tit. 7 of Revised Charter; same being sec. 3 of chap. 13 of Laws 1860.)

The sidewalk had been in use eight or nine years, and the city had acquiesced in its use, and it was proper to submit to the jury whether the city had not by its use adopted it as one of the walks the city was in duty bound to see was kept in repair for the use of the public. (*Rehberg* v. *The Mayor*, 27 Alb. Law Jour., 235.) The case differs from *Saulsbury* v. *The Village of Ithaca* (24 Hun, 12), as there a walk had been but recently built and the corporate authorities had not in a long lapse of time acquiesced in its location and purpose as in this case.

BOARDMAN, J., says in that case: "If the decision is to build and the work is done, the corporation becomes responsible for any *negligence* or unskillfulness in the manner in which it is done, and for any *negligence* in maintaining it in a safe condition thereafter."

There had been no adoption of the sidewalk by the corporate authorities, and no such lapse of time as in the case before us, from which the jury might have inferred an adoption of the sidewalk in question. (*Requa* v. *The City of Rochester*, 45 N. Y., 134; *Todd* v. *City of Troy*, 61 id., 506; *Walker* v. *City of Lockport*, 43 How. Pr., 366; *Phelps* v. *City of Mankato*, 23 Min., 276.)

It is contended in the appellant's argument submitted to us that "the duty imposed by defendant's charter upon plaintiff's lessor to repair was transferred to the plaintiff when he leased and went into the exclusive possession of these premises, as he did some three months prior to the time of the accident." How was such duty transferred? First. There was no covenant to repair given by the lessee. Second. There is nothing in the charter which charges such duty upon a tenant. The language is explicit that it shall be the duty of "every owner."

This liability to repair sidewalks did not exist at common law, it has its origin in statutory enactments, and persons not named in the terms of the statute, or in some express covenant, are not burdened with the obligation or bound to such a duty. (*The Village of Fulton* v. *Tucker*, 3 Hun, 529.)

It might as well be contended that the lessee became liable to pay highway taxes by simply becoming a tenant of premises. If he had created a nuisance or an obstruction in the walk, then he might be liable for the consequences following therefrom (*Swords* v. *Edgar*, 59 N. Y., 28), and, of course, any injuries he received in consequence thereof would have been directly traceable to his own wrong, and therefore he would not be in a situation to recover by reason thereof.

We think, upon the facts in this case, the neglect was that of the city, or "the owner" of the adjacent premises, and that it was not a neglect of the plaintiff, the lessee, and that he is not debarred of the common rights of the public to have sidewalks suitably kept in repair for its use, and that injuries sustained by the plaintiff may be recovered if the same occurred without his fault. The jury have so found that the plaintiff is not chargeable with any negligence. The case of *Doupe* v. *Genin* (45 N. Y., 119) does not aid the defendant, which holds that a landlord is not bound to repair in case of fire, unless he has so expressly covenanted. Nor does the case of *Witty* v. *Mathews* (52 N. Y., 512), where it is held that the obligation of a landlord to repair demised premises rests solely upon contract as between himself and his tenant. Those cases are dealing with a landlord's obligations to his tenant, and, of course, do not apply to the questions before us.

To bring the plaintiff within the argument of the appellant there

should have been some evidence that the tenant had expressly covenanted to repair the premises, or especially the sidewalk in question, or had erected or maintained a nuisance which caused the injuries complained of. In the case in hand there is no ground upon which to rest an averment of duty to repair upon the plaintiff. (*Melody* v. *Reab*, 4 Mass., 471; *Gibson* v. *Jenney*, 15 id., 205.)

The point made that it was error to allow evidence that other persons had tumbled down upon and been injured upon the sidewalk in question, while out of repair, was decided against the appellant's views in *Quinlan* v. *The City of Utica* (11 Hun, 218), by this court, and that decision was affirmed in 74 New York, 603. We follow that case, notwithstanding several cases are found on the other side of the question. (See *Hudson* v. *Chicago & N. W. R. Co.*, 27 Alb. Law Jour., 115, and cases there cited; *Blair* v. *Pelham*, 118 Mass., 420.)

The point made as to the judge's submission to the jury of the question of notice of the defect from lapse of time is untenable. The whole question of whether the defendants had notice was left to the jury. (*Rehberg* v. *The Mayor*, 16 Weekly Dig., 178.) When referring to the necessity of notice to the defendant the judge said in his charge, viz.: "Not in *order*, for even a week would be sufficient. *Some* courts have held a week, some a little longer."    *    *    *

After further comments as to that subject he adds, viz.: "That is a question of fact for you from the evidence. Take the evidence on the part of the plaintiff and defendant, and if there was sufficient time elapsed to give the city what is called constructive notice they are just as much bound by the constructive notice as though notice had been actually served upon them."

Following this charge the appellant's counsel said, viz.: "I want to except to that portion of the charge in which your honor states *that* a week *is sufficient* to constitute constructive notice under the circumstances of the case. Exception as above taken for defendant."

Taking all the language used in the charge it is obvious that whether the defect had existed a sufficient length of time to warrant the jury in inferring actual notice or not was not properly left as a question of fact to the jury.

The trial judge in dealing with the question of actual notice, and

with such notice of the defective condition of the walk as would warrant an inference that the city authorities knew of the defect and thereafter neglected to cause its removal, was not very felicitous or perspicuous.

He said in one part of his charge, viz.: "Not in order, for even a week would be sufficient. Some courts have held a *week*, some a little longer." The jury may have understood that the court intended to instruct them, as a matter of law, that if the walk was "not in order for even a week would be sufficient to render the city liable."

We cannot approve of such instruction, and we think the defendant's exception presents an error calling for a reversal of the judgment.

Plaintiff, in his testimony, said: There is a difficulty in describing the exact board where I fell; I only know I was about a third of the distance; the walk was about three feet wide, with stringers two by three, which were rotted through at that point. * * * The witness then added: The boards were, more than half of them, loose, and all of them small. The counsel for defendant then said: "To that I object and ask that the answer be stricken out." The court "refused to strike out, and held it was competent evidence as to how the boards were." We think the exception presents no error.

The witness Chandler, who was familiar with the sidewalk, stated: "I don't *know* the *place* where plaintiff was hurt." He was then asked, viz.: State whether, at the time of Mr. Avery's fall, the sidewalk was in the same condition that it had been for several months. This was objected to as immaterial and incompetent, and on the further ground that the question does not fix the place, and it was allowed and the witness said it was. It was a competent question, and the evidence which it called for bore upon the question of notice of defects to defendants.

The evidence tended to show that the walk needed repairs. (*Corbin* v. *The Village of Canajoharie*, 16 Weekly Dig., 188.) In *Reed* v. *The Central Railroad Company* (45 N. Y., 580) it was stated by ALLEN, J., that "the fact that new ties were put on the road *after* the accident, and especially the next summer, in the *vicinity*, did not tend to prove that the road was out of repair and dangerous at the time of the injury to the plaintiff." This case

differs from that one; for the error we have pointed out we are constrained to order a new trial.

Smith, P. J., and Barker, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.