## WEATHERS v. LAYTON et al.

No. 14791—Opinion Filed Oct. 28, 1924.

1. **Schools and School Districts—Building Contracts— Competitive Bidding—Statute not Applicable to Architects for Plans.**

Section 10422, Comp. Stat. 1921, providing: "No expenditure involving an amount greater than $200 shall be made except in accordance with the provisions of a written contract, and no contract involving an expenditure of more than $500 for the purpose of erecting any public buildings or making any improvements shall be made except upon sealed proposals and to the lowest responsible bidder," does not apply to a contract made with an architect to supply plans and specifications for such contemplated building preliminary to the receipt of sealed proposals for the erection of such building.

2. **Same—Injunction—Insufficiency of Petition.**

Where plaintiff seeks injunctive relief and the petition alleges as ground therefor the failure of board of education to invite sealed proposals for the preparation of plans and specifications, preliminary to receiving proposals for the erection of a school building, such petition fails to state a cause of action, and a demurrer thereto is properly sustained.

3. **Same.**

Petition examined, and the same found not to state a cause of action entitling the plaintiff to injunction as prayed.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by P. H. Weathers against S. A. Layton et al. Judgment for defendants, and plaintiff appeals. Affirmed.

Lillard & Edwards, for plaintiff in error.

Hayson & Luckenbill and Shirk, Danner & Fowler, for defendants in error.

Opinion by RUTH, C. This action was filed in the district court by the plaintiff in error against the defendants in error, S. A. Layton and George Forsyth, architects, and the board of education of the city of Oklahoma City, seeking to restrain and enjoin the defendants from proceeding with the erection of any building or the expenditure of any money derived from a certain bond issue voted by the qualified electors of Oklahoma City for the erection and equipment of certain school buildings, or the consideration of any plans, specifications, or estimates submitted by the architects, and enjoining the architects from in any manner acting for the said board as its architects under a contract entered into between the said architects and the board of education.

For convenience the parties will be herein referred to as plaintiff, architects, and board, as hereinbefore set forth.

Plaintiff's petition is of considerable length and it will not be necessary to set the same forth in full, but such parts only as are necessary for a full understanding of the grounds upon which he bases his right to injunctive relief will be referred to.

Plaintiff's petition alleges the board requested the mayor of Oklahoma City to call an election and submit to the voters the question of issuing bonds in the sum of $1,900,000, for the purchase of sites for school buildings and playgrounds, and for the erection and equipment of school buildings. That at the election, the proposal was adopted and the bonds sold. That an action was brought in the district court of Oklahoma county to enjoin the board from selling the bonds, and the injunction allowed, and the board appealed to this court, where the judgment was reviewed on March 13, 1923, and the Supreme Court reversed the trial court, and dissolved the injunction, and on April 5, 1923, a petition for rehearing was pending in this court. That on April 2, 1923, the board met and adjourned subject to the call of the president; that the board met on April 5, 1923, but the minutes of the meeting failed to show it met at the call of the president; that the attorney for the board reported that the Supreme Court had decided the injunction proceeding in favor of the board, but the case was still pending on rehearing, and the board thereupon passed the following resolution:

"Whereas, it is immediately necessary to make preparation for the erection of school buildings and addition in the Oklahoma City school district to meet the rapid increasing demands at the earliest possible moment, and whereas, much can be accomplished before the actual issuance of the bonds authorized at the election held April 25th, 1922, the issuance of which was enjoined by the district court of Oklahoma county:

"Now, therefore, be it resolved by the board of education of Oklahoma City, Oklahoma, that Layton, Smith and Forsyth, architects, be employed to prepare and submit to the board for approval as soon as possible, plans for such buildings and additions with the understanding that their compensation shall be contingent upon the dismissal of said injunction suit, at which time the board will enter into formal contract with said Layton, Smith and Forsyth, architects, for the preparation of such plans and the supervision of the erection of the buildings and additions, and provide therein for their being compensated by the payment of 5% of the actual cost of said buildings and additions."

Plaintiff alleges he called upon the secretary of the board about April 10, 1923, for the purpose of ascertaining when the board would let the contract to architects for plans, specifications, etc., and was informed the architects had already been employed. That at a meeting of the board of April 30, 1923, this not being a regular meeting day of the board and the minutes not containing any

record of a call for said meeting, the president and secretary of the board were instructed and authorized to sign a contract with Layton, Smith and Forsyth, architects, and that a contract was thereupon entered into between the board and the architects; that no advertisement or notice had been published or given of the board's intention to let a contract for architectural and supervisory services.

Plaintiff alleges the said contract was not let according to law, and is void, for that:

"No advertisement of a date when sealed bids or proposals would be received by the defendant board of education was ever had prior to the letting of the contract; that no notice of a time or place for the letting of the contract was ever published so that other architects could be permitted to file sealed bids or proposals as required by law; that no sealed bids or proposals on such contract were ever filed or received by said board of education pursuant to any lawful notice; that the said contract was let at an unauthorized and special meeting of the board, and no notice of said meeting was ever had by the public; that the resolution authorizing the said contract was adopted at a special meeting of said board, and no notice of said meeting was had by the public; and all transactions had relative to the letting of said contract by said board were had at special and unauthorized meetings."

Plaintiff alleges that the architects submitted plans and specifications, and the board authorized the issuance of a warrant in favor of the architects of June 25, 1923, for $15,000, but that the same was unlawful as no money was due the architects until the building contracts were let and the buildings completed by the contractor, and plaintiff prays an injunction as heretofore set forth.

Plaintiff attaches a copy of the contract complained against, showing provision for a new school building and additions to old buildings, some 16 in number.

To this petition the defendant board and the architects filed their demurrers, for that the petition fails to state facts sufficient to constitute a cause of action against the defendants, or to entitle plaintiff to the relief sought.

The demurrers were by the court sustained and the temporary injunction prayed for denied, and this cause comes here regularly for review on appeal from the judgment sustaining the demurrer.

Plaintiff presents his case on four "propositions" as follows:

(1) The court erred in sustaining defendants' demurrer, and in denying the

plaintiff the relief prayed for. (2) Where bonds are voted the funds derived therefrom must be used in strict accordance with the proposal. (3) Any contract made involving the expenditure of any of the funds of this bond issue must come within the proposal voted upon. (4) No contract involving an amount greater than $500 can be let by the board of education, except on sealed bids or proposals."

Propositions numbered two and three are correctly stated, but it is a matter of common knowledge that in the erection of, and addition to 16 school buildings, involving an expenditure for construction of $1,355,000, plans, and specifications are necessary and indispensable to the proper construction of the buildings, and any expenditure made for such plans and specifications is within proposal voted upon, for in the absence of the same, proposals could never be received and contracts awarded, and these plans and specifications must be prepared, approved, and accepted prior to the reception of estimates for construction.

In support of proposition No. 4, plaintiff cites section 10422, Comp. Stat. 1921, as follows:

"No expenditure involving an amount greater than $200 shall be made except in accordance with the provisions of a written contract, and no contract involving an expenditure of more than $500 for the purpose of erecting any public buildings or making any improvements shall be made except upon sealed proposals and to the lowest responsible bidder."

It will be noted the section refers to the erection of the public building and not to any preliminary steps necessary to put the actual erecting process in operation. The purchase of a site upon which to erect the school is a necessary preliminary step to the erection of the building, and thousands of dollars must be expended to acquire such site, and this is contemplated when bonds are voted, and it would be idle and frivolous to argue that the board must advertise for bids for furnishing a site, and accept the bid of the lowest responsible bidder regardless of the location of the site offered, as the law contemplates the erection of the school upon a site so situated as to best meet the needs of the particular community it is intended to serve, and if the particular site selected by the board cannot be acquired by voluntary sale, the law provides a means of acquiring that site by condemnation proceedings, and so the selection of that site, whether its acquisition involves the expenditure of $500 or $50,000, must of necessity be left to the judgment and discretion of the board.

Plaintiff calls our attention to Hannan v. Board of Education of Lawton et al., 25 Okla. 372, 107 Pac. 646, but an examination of that case will disclose it is more favorable to the defense than to the plaintiff. In the Hannan Case the board of education of Lawton caused plans and specifications for the erection of the building to be prepared by the architect, except the heating and ventilating system, and then advertised for "bids accompanied by plans and specifications in form of a proposal" for the heating and ventilating system resulting in a "hodge podge" or "pot pouri" of plans and specifications, schemes and devices, for the installation of a heating and ventilating system, with prices or proposals ranging from the sublime to the ridiculous, and the board, unless composed of heating and ventilating engineers, could not determine which set of plans and specifications would best meet the needs of the building and its occupants, and even after deciding they would be compelled to accept the plan best fitted to their needs regardless of price, thus eliminating a lower bidder who would insist his system was as efficient as the one accepted.

The heating and ventilation was a part of the actual construction or erection of the building, and Mr. Justice Dunn, of this court, citing with approval Mazet v. City of Pittsburgh (Pa.) 20 Atl. 693, says:

"How can there be a lowest bidder, when parties proposing to bid are instructed to prepare their own specifications and submit them with their respective bids? The expression 'lowest bidder' necessarily implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared, specifications of work to be done, and materials to be furnished, etc., specifications freely accessible to all who may desire to compete for the contract; and upon which alone their respective bids must be based."

And so, in the case at bar, if the board was required to advertise for plans and specifications for the erection of 16 school buildings, the architectural designs might range from the "little red school house" to a reproduction of the Capitol building, with proposals as to cost as widely divergent as the designs, and it would resolve itself back into the proposition of permitting the board to exercise its discretion and adopt such plans as in their own judgment best suited the present need, and came within the sum realized from the sale of the bonds, and thereby adopt a "common standard by which to measure the respective bids," and invite sealed proposals for the erection of the building according to this common standard

accessible to all, as contemplated by section 10422, supra.

In Fones Hardware Co. v. Erb (Ark.) 17 S. W. 7, 13 L. R. A. 353, cited with approval by this court in the Hannan Case, supra, it is said:

"The Constitution contains no express provisions with regard to plans and specifications, but the requirement of an award to the lowest bidder implies the further requirement that such information shall be put within the reach of bidders as will enable them to understand the offering and bid intelligently, and enable the representatives of the county to know who is the lowest bidder."

In Ricketson v. City of Milwaukee (Wis.) 81 N. W. 864, the court says it is a "plunge in the dark" when public officials seek to obtain bids for the construction of a definite improvement without first securing plans and specifications fully showing and describing the improvements sought to be constructed, and each and every part or unit.

In Chippawa Bridge Co. v. Durand (Wis.) 99 N. W. 603, referred to in the Hannan Case, supra, it is said:

"In harmony with that, we hold that the charter in question required, as an essential to the validity of the contracts for the bridge, the preparation of proper plans and specifications for those parts of the bridge proposed to be let separately, the placing thereof within convenient reach of all desiring to consult the same for the purpose of bidding for the work, and the giving of public notice in some way reasonably appropriate to reach all persons likely to desire to participate in the competition."

In Harris v. Cooley (Cal.) 152 Pac. 300, it is said:

"It must, of course, be conceded that the express power conferred on boards of school trustees to erect school buildings implies as a necessary incident to that power, the right to procure plans and specifications."

To the same effect are People ex rel. Kiehn v. Board of Education of the City of Utica, 190 N. Y. S. 798; City of Newport News v. Potter, 122 Fed. 321; City of Houston v. Glover (Tex.) 89 S. W. 425.

In the case last cited the Court of Civil Appeal of Texas in passing upon a similar statute said that the provision of the statute requiring sealed bids where the contemplated expenditure exceeded $500, "has no application to the employment by the city of an architect to prepare plans and specifications for a public building." In 28 Cyc. p. 589, it is said: "Municipal power to erect buildings includes power to employ an architect," citing Peterson v. New York, 17

N. C. 449; Carling v. Jersey City, 71 N. J. Law, 157, 58 Atl. 395.

Dillons Municipal Corp. (5th Ed.) p. 1203, announces the following principle:

"Scientific knowledge or professional skill has also been regarded as furnishing a ground for an exception to the statutory rule. Thus it has been said that the services of a lawyer, or a physician, or of an architect, or surveyor, are not embraced within a provision requiring the letting of contracts to the lowest bidder," citing City of Houston v. Potter (Tex. Civ. App.) 91 S. W. 389; Eoneule v. City of Corning, 174 N. Y. Supp. 220; Stratton v. Allegheney Co. (Pa.) 91 Atl. 894; City of Newport News v. Potter, supra; City of Houston v. Glover, supra; Miller v. Boyle (Cal.) 18 Pac. 421.

It is useless to multiply authorities as the rule is well-established by abundant authorities, fortified by sound reason, and the very necessities of the case. The board not only has the implied authority, but the duty is imposed upon it, to supply plans and specifications for a contemplated public improvement prior to inviting proposals for the construction of the same, and thereby establishing a common standard accessible to all who desire to submit proposals for the completion of the work, and by which the proposals so submitted may be measured, for the purpose of ascertaining the lowest responsible bidder.

The plaintiff's petition being based upon the refusal of the board to accept sealed proposals from architects, the petition failed to state a cause of action, and finding no error in the judgment of the trial court in sustaining the defendants' demurrer to the petition of the plaintiff, the judgment of the court below, for the reasons herein stated, should be affirmed.

By the Court: It is so ordered.