REGENTS FOR HIGHER EDUCATION — MONEY FOR PLANNING PROJECTS The State Regents for Higher Education may not allocate to the Regents of the University of Oklahoma money from the State of Oklahoma Building Bonds of 1968, as authorized by Article X, Section 38 Oklahoma Constitution, and 62 O.S. 57.121 [62-57.121] (1969) et seq., for the purpose of planning and employing an architect or architects to prepare plans for a Library/Learning Resources Center and Biomedical Sciences Building at the Medical Center and a Law Center on the Norman campus before such projects are entirely funded. The Attorney General has had under consideration your request for an opinion in which you ask as follows: "May the State Regents for Higher Education allocate to the Regents of the University of Oklahoma money from the State of Oklahoma Building Bonds of 1968 for the purpose of planning and employing an architect or architects to prepare plans for a Library/Learning Resources Center and a Biomedical Sciences Building at the Medical Center and a Law Center on the Norman campus before such projects are entirely funded?" You inform us in your letter that the Chancellor of the State Regents for Higher Education advised Dr. James Dennis, the Executive Vice President of the University of Oklahoma Medical Center, that it was not permissible for the State Regents to allocate this money for planning purposes without the project's being completely funded. You note that this advice was apparently given in reliance upon Okl.Op.A.G. 64-191, dated September 22, 1964, and addressed to Governor Bellmon. On December 10, 1968, the people of this state adopted Article X, 38, Oklahoma Constitution, which states in pertinent part as follows: "The Legislature of the State of Oklahoma is hereby authorized to enact necessary legislation whereby the State may become indebted in an amount not to exceed Ninety-nine Million, Eight Hundred Eight Thousand Dollars ($99,808,000.00) For the purpose of planning and constructing new buildings or additions to existing state buildings and other capital improvements for remodeling, modernizing and repairing any and all existing buildings and capital improvements and purchase of land, equipment and furnishings necessary for such new construction or remodeling for the necessary departments and agencies of state government in the amounts and for the purposes set forth as follows: 1. Oklahoma State Regents for Higher Education for expenditure at all constituent institutions. $34,250,000.00 2. Oklahoma State Regents for Higher Education for expenditure at the Medical Center of the University of Oklahoma ....... $26,870,000.00." (Emphasis added) Title 62 O.S. 57.122 [62-57.122] (1969), provides in pertinent part as follows: "The State of Oklahoma Building Bonds Commission, created by Title 62, Oklahoma Statutes 1961, Section 57.1, acting for and on behalf of the State of Oklahoma, shall be the agency by and through which the State of Oklahoma shall incur indebtedness to the extent of the sum of Ninety-nine Million Eight Hundred Eight Thousand Dollars ($99,808,000.00) for the purpose of planning and constructing new buildings or additions to existing state buildings and other capital improvements for remodeling, modernizing and repairing existing buildings and capital improvements and purchase of land, equipment and furnishings necessary for construction or remodeling for the following departments and agencies of state government in the amounts and for the purposes set forth as follows: 1. The constituent institutions of the Oklahoma State System of Higher Education ...... $34,250,000.00 2. Medical Center of the University of Oklahoma .................................... $26,870,000.00." (Emphasis added) In 62 O.S. 57.121 [62-57.121] (1969), the Legislature declared it to be its purpose to vitalize Article X, Section 38 Oklahoma Constitution, in Section 57.122, supra, and following sections. Unlike Article X, Section 31, Article X, Section 33, Article X, Section 34, Article X, Section 36 and Article X, Section 37 Oklahoma Constitution, Section 38 of that Article authorizes the issuance of bonds for purposes of planning as well as construction and repair of buildings. The word "plan" is defined in Funk and Wagnall's, New Standard Dictionary of the English Language 1891 (1934), as: " . . . 2. To give visible form or representation to, as by plotting upon paper; draw in detail the different parts, dimensions, etc., of; delineate; as, to plan a building or a machine. . . ." The word "planning" as used in Article X, Section 38 supra, and its vitalizing legislation obviously encompasses the use of architectural services to design and plan for the subsequent construction of buildings. The Board of Regents of the University of Oklahoma clearly has the authority to employ architects. Title 70 O.S. 3305 [70-3305] (1969), states in pertinent part as follows: "The Board of Regents of the University of Oklahoma shall have the supervision, management and control of the University of Oklahoma and all its integral parts and shall have the following additional powers and duties: "(b) Employ and fix the compensation and duties of such personnel as it deems necessary, including architects, attorneys, engineers and other professional and technical persons, for its operation and for the operation of the University of Oklahoma." The question remains whether the planning authorized by Article X, Section 38 supra, contemplates planning only for buildings that can be constructed within the allocated funds, or contemplates planning for facilities that may or may not be financed within the existing revenues. The answer to that question depends on whether the phrase "planning and constructing" is read in the conjunctive or disjunctive sense. If we interpret "planning and constructing" as conjunctive, we must conclude that Article X, Section 38 authorizes planning only to the extent that the buildings for which plans are made can be financed within the money presently allocated to the University of Oklahoma by the State Regents for Higher Education. Although the word "and" can be used disjunctively, and is sometimes construed to mean "or" see Baker v. State, 36 Okl. 328,254 P. 512 (1927), we are persuaded that in the situation under consideration the word is used in the conjunctive sense. In Article X, Section 38 supra, and its vitalizing legislation, three types of capital investments are authorized. First, there is "purchase of land, equipment and furnishings necessary for construction or remodeling." Second, "capital improvements for remodeling, modernizing and repairing existing buildings" are approved. Third, provision is made for expenditure "for the purpose of planning and constructing new buildings or additions to existing state buildings." Had the legislature intended that any of the proposed indebtedness be used strictly for planning structures which could not be built within the limits of the bond issue, they surely would have listed a fourth category of capital investment, planning and designing. The mere insertion of the word planning in the phrase "planning and constructing" cannot be said to evidence legislative intent to authorize extensive planning without regard to the present ability to construct the buildings so planned. Unquestionably, authority to construct a public building carries with it authority to contract for architectural plans and services necessary to build it. In Weathers v. Layton Forsyth,104 Okl. 14, 230 P. 750 (1924), the Supreme Court quoted the applicable rule with approval from an earlier California case, as follows: "'It must, of course, be conceded that the express power conferred on boards of school trustees to erect school buildings implies as a necessary incident to that power the right to procure plans and specifications."' We think the legislature was recognizing this incidental power by using the phrase "planning and constructing" in its referendum to the people which became Article X, Section 38 Oklahoma Constitution. For the above reasons, we must construe the phrase "planning and constructing" in Article X, Section38 Oklahoma Constitution, and its vitalizing legislation, in the conjunctive sense. Consequently, it is necessary for the facilities for which plans are to be made to be financed from funds presently allocated to the University of Oklahoma by the State Regents for Higher Education. It is the opinion of the Attorney General, then, that your question be answered in the negative. The State Regents for Higher Education may not allocate to the Regents of the University of Oklahoma money from the State of Oklahoma Building Bonds of 1968, as authorized by ArticleX, Section 38 Oklahoma Constitution, and 62 O.S. 57.121 [62-57.121] (1969) et seq., for the purpose of planning and employing an architect or architects to prepare plans for a Library/Learning Resources Center and Biomedical Sciences Building at the Medical Center and a Law Center on the Norman campus before such projects are entirely funded. (W. J. Monroe)